# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G6 HOSPITALITY FRANCHISING LLC, et al., | : : | |
| Plaintiffs | : : | No. 1:11-cv-02176 |
| v. | : : | (Judge Kane) |
| HI HOTEL GROUP, LLC, et al., Defendants | : : | |

## MEMORANDUM

Before the Court is Plaintiffs' petition for treble damages, attorney's fees, costs, and prejudgment interest. (Doc. No. 224.) For the reasons that follow, Plaintiffs' petition will be granted in part and denied in part.

## I.  BACKGROUND

On or about October 6, 2009, Defendant HI Hotel Group, LLC ("HI Hotel Group") and its members, Navnitlal Zaver ("Zaver") and Shailesh Patel ("S. Patel"), entered into a Motel 6 franchising agreement with Accor Franchising North America, LLC concerning property located at 1450 Harrisburg Pike, Carlisle, Pennsylvania.[1] (Doc. Nos. 61 ¶ 22; 215 at Stipulation 7; 224-2 at 5, 32, 36; 224-3 at 20.) By September 2011, Defendant HI Hotel Group had breached the franchising agreement by failing to pay the required monthly fees or maintain brand standards. (See Doc. No. 215 at Stipulations 6, 8-10.) In fact, around that time, the motel was rebranded as a Travel Inn and, from September 27, 2011, as a Red Roof Inn. (Id. at Stipulation 18.) As

---

[1] On January 30, 2013, the parties stipulated and agreed that all pleadings and docket entries in this matter were to be "amended to replace plaintiff Accor Franchising North America, LLC with G6 Hospitality Franchising LLC, Accor North America, Inc. with G6 Hospitality LLC and Societe de Participations et D'Invesstissements de Motels with G6 Hospitality IP LLC." (Doc. No. 67.)

1

discussed in detail below, the Motel 6 name and marks nonetheless remained in use at the 1450 Harrisburg Pike location.  (Id. at Stipulations 19, 20.)

The Motel 6 franchising agreement granted Defendant HI Hotel Group the right to use Motel 6 trademarks for the operation of the franchised motel.  (Id. at Stipulation 14.)  Plaintiff G6 Hospitality IP LLC is the owner of three valid and incontestable federal trademark registrations for the Model 6 marks with registration numbers: 1,816,223, 2,264,831, and 3,660,463 ("Motel 6 trademarks").  (Id. at Stipulations 15, 17.)  By rebranding the motel as a Travel Inn on or around September 2011, Defendant HI Hotel Group lost its right to conduct business using the Motel 6 trademarks.  (See id. at Stipulations 19, 20.)  Nonetheless, Defendant HI Hotel Group continued to use the Motel 6 trademarks at the 1450 Harrisburg Pike location.  (Id. at Stipulation 20.)

On or about September 28, 2011, Defendant HI Hotel Group sold the motel to Defendant 1450 Hospitality PA, LLC ("1450 Hospitality").  (Id. at Stipulation 22.)  For months, Defendant 1450 Hospitality operated the property with the Motel 6 name and marks on "roadway signs, the building exterior, and guestroom materials."[2]  (See id. at Stipulations 29, 31.)  In fact, Defendant 1450 Hospitality used "Motel 6 forms for guests to sign at the registration desk" and issued Motel 6 receipts to guests after payment.  (Id. at Stipulation 23.)  Defendants 1450 Hospitality and its members, Priyesh Shah ("Shah") and Indrajit Patel ("I. Patel"), did not have the right to use the Motel 6 trademarks.  (Id. at Stipulation 24.)  On November 2, 2011, the Motel 6 franchising agreement was terminated.  (Id. at Stipulation 28.)

---

[2] In fact, the parties stipulated that Defendants did not completely remove "materials bearing the Motel 6 name or marks" until December 31, 2011.  (Doc. No. 215 at Stipulation 31.)

On November 21, 2011, Plaintiffs G6 Hospitality Franchising LLC, G6 Hospitality IP LLC, G6 Hospitality LLC, and Motel 6 Operating L.P. (together "Plaintiffs") filed the above-captioned action, alleging that Defendants HI Hotel Group and 1450 Hospitality, along with their respective members Zaver, S. Patel, Shah, and I. Patel, infringed Plaintiffs' Motel 6 trademarks. (Doc. No. 1.)  Plaintiffs also brought a breach of contract claim against Defendants HI Hotel Group, S. Patel, and Zaver.  (Id.)  Prior to trial, the parties stipulated that Defendants HI Hotel Group and 1450 Hospitality committed trademark infringement under the Lanham Act.[3]  The jury trial commenced on April 27, 2015 to determine the amount of damages, whether Defendants Zaver, S. Patel, Shah, and I. Patel were personally liable for the infringement, and whether the infringement was intentional.

On April 30, 2015, the jury found that Defendant HI Hotel Group's infringement amounted to $81,000.00 in actual damages and that Defendant 1450 Hospitality's infringement amounted to $125,000.00 in actual damages.  (Doc. No. 219.)   The jury also found that: (1) Defendant S. Patel was personally liable for HI Hotel Group and 1450 Hospitality's infringement; (2) Defendant Zaver was personally liable for HI Hotel Group's infringement; (3) Defendant I. Patel was personally liable for 1450 Hospitality's infringement; and (4) Defendant Shah was personally liable for 1450 Hospitality's infringement.  (Id.)  Defendants S. Patel, I. Patel, and Shah were also found by the jury to have infringed Motel 6's trademarks "intentionally or willfully, knowing it was an infringement, or was willfully blind to the infringement."  (Id.)  On May 18, 2015, the Court subsequently granted judgment as a matter of

---

[3] On May 18, 2015, this Court granted Plaintiffs' motion for default judgment as to Defendant HI Hotel Group for trademark infringement and breach of contract and as to Defendant 1450 Hospitality for trademark infringement under the Lanham Act.  (Doc. No. 223.)

law against Defendants HI Hotel Group, S. Patel and Zaver as to Plaintiff's breach of contract claim. (Doc. No. 222.)

On May 19, 2015, Plaintiffs petitioned the Court to award Plaintiffs treble damages, attorney's fees, costs, and prejudgment interest. (Doc. No. 224.) Plaintiffs contend that they are contractually entitled to reasonable attorney's fees and costs under the Motel 6 franchising agreement as well as statutorily entitled to treble damages, reasonable attorney's fees, costs, and prejudgment interest under Section 35 of the Lanham Act. (See id.) On June 2, 2015, Defendants S. Patel, Shah, and I. Patel wrote this Court to oppose an award of treble damages and attorney's fees. (See Doc. Nos. 227, 228.) The petition is now ripe for disposition.

## II.   DISCUSSION

Section 35 of the Lanham Act, codified at 15 U.S.C. § 1117, lists the several remedies available for trademark infringement by separating and categorizing "each type of monetary award." Georgia-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 717 (4th Cir. 2015) (citing 15 U.S.C. § 1117). Section 35 of the Lanham Act distinguishes, in particular, the monetary relief for "counterfeiting" from mere trademark infringement. State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 720 (9th Cir. 2005). As the United States Court of Appeals for the Fourth Circuit summarized in Georgia-Pacific Consumer Products LP:

> Section 1117(a), which applies generally to trademark infringement cases … authorizes a plaintiff to recover (1) the defendant's profits based simply on proof of the defendant's sales; (2) the plaintiff's damages; (3) court costs; and (4) in exceptional cases, attorneys fees … Section 1117(b), on the other hand, mandates the award of treble profits or treble damages for a defendant's "use of [a] counterfeit mark" if the infringement consists of (1) "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark," or (2) "providing goods or services [using such mark], with the intent that the recipient

4

of the goods or services would put the goods or services to use in committing the violation." 781 F.3d at 717-18 (citing 15 U.S.C. § 1117).  Thus, if a defendant's use of a "counterfeit mark" consists of "<u>intentionally</u> using a mark or designation, [and] <u>knowing</u> such mark or designation is a counterfeit mark," the district court is required to award treble "profits or damages, whichever amount is greater, together with a reasonable attorney's fees" absent extenuating circumstances. <u>Georgia-Pac. Consumer Prods. LP</u>, 781 F.3d at 717-18 (quoting 15 U.S.C. § 1117(b)); <u>accord</u> <u>Babbit Elecs., Inc. v. Dynascan Corp.</u>, 38 F.3d 1161, 1183 (11th Cir. 1994) (interior citations omitted).[4]  The Court will first turn to whether the award of treble damages and attorney's fees is mandated under 15 U.S.C. § 1117(b).

        **A.**     **Mandatory Treble Damages and Attorney's Fees under 15 U.S.C. § 1117(b)**

Plaintiffs contend that they are entitled, under 15 U.S.C. § 1117(b), to treble damages and reasonable attorney's fees on their Lanham Act claims against all corporate and individual defendants, with the exception of Defendant Zaver.  (Doc. No. 224 at 11-18, 22.)  Plaintiffs argue that Section 1117(b) applies to the instant case because (1) the sale of inauthentic services bearing an authentic trademark is counterfeiting under 15 U.S.C. § 1117(b); and (2) that holdover franchisees are counterfeiters for purposes of 15 U.S.C. § 1117(b).  (Doc. No. 224 at 11-16.)  Defendants merely state that they oppose paying additional damages to Plaintiffs and do not address Section 35(b) of the Lanham Act.  (<u>See</u> Doc. Nos. 227, 228.)  Accordingly, this Court must first determine whether Defendants' use of Plaintiffs' trademarks amounts to counterfeiting.

---

[4] The determination of whether infringement "amount[s] to counterfeiting is a legal conclusion" for the Court, not the jury.  <u>See</u> <u>State of Idaho Potato Comm'n</u>, 425 F.3d at 720 (citing <u>Humetrix, Inc. v. Gemplus S.C.A.</u>, 268 F.3d 910, 921 (9th Cir. 2001)).

A split in authority has developed in federal jurisprudence over whether an ex-licensee's continued use of a trademark constitutes counterfeiting for purposes of awarding treble damages and attorney's fees under 15 U.S.C. § 1117(b).  Compare U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1187 (6th Cir. 1997), with State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 772 (9th Cir. 2005).  In fact, district courts in this Circuit are also split on the matter.  Compare Pennzoil-Quaker State Co. v. Smith, No. 05-1505, 2008 WL 4107159, at *22 (W.D. Pa. Sept. 2, 2008), with Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC, No. 06-1581, 2007 WL 1674485, at **7-8 (D.N.J. June 8, 2007); Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc., No. 03-799, 2005 WL 2656676, at *12 (D.N.J. Oct. 18, 2005).  Accordingly, without binding Third Circuit precedent,[5] the Court turns to the statutory definition of a "counterfeit mark" and the legislative history behind 15 U.S.C. § 1117(b).

The Court's inquiry begins with an examination of the plain language of the statute. United States v. Berrios, 676 F.3d 118, 139 (3d Cir. 2012).  The Lanham Act generally defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable

---

[5] Plaintiffs argue that the Third Circuit affirmed the District Court for the Eastern District of Pennsylvania's decision in Choice Hotels Int'l, Inc. v. Pennave Associates that "a franchisee who continued using the franchisor's 'Clarion Hotel' marks after the franchise agreement was terminated was liable for statutory counterfeiting damages."  (Doc. No. 224 at 13-14.)  However, neither the district court nor the Third Circuit opinion makes any reference or devotes any discussion to the circuit split identified in the cases above.  See Choice Hotels Int'l, Inc. v. Pennave Associates, 159 F. Supp. 2d 780, 786 (E.D. Pa. 2001).  In fact, appellant's brief in Choice Hotels Int'l, Inc focused on the award of attorney's fees and did not address the jurisprudential split concerning 15 U.S.C. § 1117(b).  Brief for Appellant David S. Miller, Choice Hotels Int'l, Inc. v. Pennave Associates, 43 F. App'x 517 (3d Cir. 2002) (Nos. 01-1632, 01-1925, 01-2397), 2001 WL 34609294, at **2-4.

from, a registered mark."[6]  15 U.S.C. § 1127; see also 15 U.S.C.A. § 1116(d)(1)(B).  "Spurious" is not defined by the Lanham Act.  In the absence of a statutory definition, the Court gives "the words used their ordinary meaning."  United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009) (interior quotations omitted).  Black's Law Dictionary defines "spurious," in relevant part, as "[d]eceptively suggesting an erroneous origin[,] fake."  Spurious, Black's Law Dictionary (10th ed. 2014).

By indicating an erroneous or fake origin, the Lanham Act's use of the term "spurious" – at first glance – lends support to the Sixth Circuit's conclusion that "the [unauthorized] use of an original trademark" is not counterfeiting.  U.S. Structures, Inc., 130 F.3d at 1192.  However, the Court's inquiry of the statute's plain language does not resolve whether a "genuine trademark [can] become spurious when it is used on counterfeit goods."  2-5 Gilson on Trademarks § 5.19 (2015) (emphasis added).  In other words, when Defendants continued to use the genuine Motel 6 trademarks after the rebranding and property sale, did the product or service "itself become[] a 'counterfeit' just as it would if an imitation of the [Motel 6] mark" were used?  Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 900 (9th Cir. 1997).  Accordingly, because the statutory meaning of "counterfeiting" is unclear as applied to the instant case, the Court turns to 15 U.S.C. § 1117(b)'s legislative history.  In re Cohen, 106 F.3d 52, 57 (3d Cir. 1997).

---

[6] Section 1116(d) adds the additional requirement that a "counterfeit mark" (1) "is registered with the U.S. Patent and Trademark Office's principal register" and (2) that "the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced."  All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc., 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (citing 15 U.S.C.A. § 1116(d)(1)(B)).  Section 1116(d) applies for purposes of assessing damages under 15 U.S.C. § 1117(b).

The legislative history states that the Trademark Counterfeiting Act of 1984, authorizing trademark owners to bring civil suits for treble damages, "addresses only the use of spurious marks that are 'identical to or substantially indistinguishable from' a registered mark." Sen. Rep. No. 98-526, at 3 (1984) (reasoning why "overrun goods" as well as "authentic trademarked goods that have been obtained from overseas markets" are not counterfeit). "[T]rademark counterfeiting" is defined as "selling or otherwise trafficking in goods or services through the use of spurious trademarks." Sen. Rep. No. 98-526, at 4 (1984). The record describes "spurious" as "not genuine or authentic" and stresses the principle that a "counterfeit mark is the most egregious example of a mark that is 'likely to cause confusion.'" Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976, H-12078-79 (1984).

Accordingly, in light of the relevant legislative history and statutory definition, the Court is persuaded by the Sixth Circuit's holding in United States Structures Inc. that Section 1117(b) "does not apply where … a holdover franchisee continues to use the franchisor's original trademark after the franchise has been terminated." U.S. Structures, Inc., 130 F.3d at 1192. The Sixth Circuit succinctly reasoned that, "[a]lthough the use of an original trademark is without authorization, it is not the use of a counterfeit mark." Id. While the Court recognizes the "likelihood of confusion when an infringer uses the exact trademark," Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990), the statute's language and corresponding legislative history indicate that 15 U.S.C. § 1117(b) applies to "the use of spurious marks," not the unauthorized use of a genuine mark after a license has terminated.[7] See, e.g.,

---

[7] In addition to the aforementioned definition of "trademark counterfeiting" and "spurious," the legislative history's rationales for exempting "overrun goods" and "parallel imports" from the term "counterfeit mark" reinforces the notion that counterfeiting refers to the "use of spurious marks," as opposed to the unauthorized use of genuine marks. See Sen. Rep.

Pennzoil-Quaker State Co. v. Smith, No. 05-1505, 2008 WL 4107159, at *21 (W.D. Pa. Sept. 2, 2008) ("[T]he plain language of the statute indicates that the term 'counterfeit' refers to the mark itself, not the nature of the goods and services associated with the mark …."); Motor City Bagels, L.L.C. v. Am. Bagel Co., 50 F. Supp. 2d 460, 489 (D. Md. 1999).

Thus, the Court will deny Plaintiffs' petition for treble damages and attorney's fees under 15 U.S.C. § 1117(b).[8]

### B.  Attorney's Fees and Costs on Lanham Act Claims under 15 U.S.C. § 1117(a)

Having determined that 15 U.S.C. § 1117(b) is not applicable, the Court next turns to whether an award of reasonable attorney's fees and costs is proper under 15 U.S.C. § 1117(a) for Plaintiffs' Lanham Act claims. Plaintiffs contend that imposing attorney's fees and costs is proper under 15 U.S.C. § 1117(a) for all defendants except Zaver because this case is "exceptional." (See Doc. No. 224 at 11, 17-18, 22-23.) In support thereof, Plaintiffs emphasize how their "efforts to obtain timely resolution of their claims were repeatedly thwarted by defendants' failure to respond to discovery" as well as the jury's finding that Defendants S. Patel, I. Patel, and Shah intentionally or willfully infringed the Motel 6 trademarks. (Id. at 2-3, 18.)

---

No. 98-526, at 3, 10 (1984); Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976, H-12079 (1984).

[8] The Court also declines Plaintiffs' request for treble damages under 15 U.S.C. § 1117(a). (Doc. No. 224 at 18.) "Section 1117(a) provides that 'the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.'" U.S. Structures, Inc., 130 F.3d at 1191 (emphasis added) (quoting 15 U.S.C. § 1117(a)). The Court is not persuaded that the circumstances of this case warrant trebled damages under 15 U.S.C. § 1117(a). See, e.g., New York State Soc. of Certified Pub. Accountants v. Eric Louis Associates, Inc., 79 F. Supp. 2d 331, 355-56 (S.D.N.Y. 1999) (citing Joint Explanatory Statement, 130 Cong. Rec. H. 12,076 at 12,083 (Oct. 10, 1984)).

Section 35(a) of the Lanham Act, codified at 15 U.S.C. § 1117(a), provides in relevant part as follows:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office … the plaintiff <u>shall</u> be entitled … to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) <u>the costs of the action</u> ... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. … The court <u>in exceptional cases may award reasonable attorney fees</u> to the prevailing party.

15 U.S.C. § 1117(a) (emphasis added).  The Lanham Act does not define what constitutes "an exceptional case" for purposes of awarding attorney's fees under 15 U.S.C. § 1117(a).[9] <u>Securacomm Consulting, Inc. v. Securacom Inc.</u>, 224 F.3d 273, 279-80 (3d Cir. 2000); 3-14 Gilson on Trademarks § 14.03 (2015).

For decades, the Third Circuit had "held that an exceptional case under § 35(a) must involve culpable conduct on the part of the losing party."  See <u>Securacomm Consulting, Inc.</u>, 224 F.3d at 280 (citing <u>Ferrero U.S.A., Inc. v. Ozak Trading, Inc.</u>, 952 F.2d 44, 47 (3d Cir. 1991)). Willful or "knowing infringement" qualified as "culpable conduct" for purposes of 15 U.S.C. § 1117(a).  <u>Id.</u>; <u>see</u> <u>E.A. Sween Co. v. Deli Exp. of Tenafly, LLC</u>, 19 F. Supp. 3d 560, 578 (D.N.J. 2014) (internal citations omitted) ("[E]xceptional cases include those where the Court has made a finding of willfulness"); <u>Metro. Fire Prot., Co. v. Metro. Fire Prot., Inc.</u>, No. 10-3661, 2011 WL 743415, at *4 (E.D. Pa. Mar. 2, 2011).

However, in <u>Fair Wind Sailing, Inc. v. Dempster</u>, the Third Circuit addressed 15 U.S.C. § 1117(a)'s "exceptional cases" requirement in light of the Supreme Court's <u>Octane Fitness, LLC</u> decision.  <u>Fair Wind Sailing, Inc. v. Dempster</u>, 764 F.3d 303, 315 (3d Cir. 2014).  In that case, the Third Circuit imported <u>Octane Fitness</u>'s expansive "definition of 'exceptionality' into [its]

---

[9] The parties do not dispute that Plaintiffs are the prevailing party.

interpretation of § 35(a) of the Lanham Act." Id. (citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014)). In particular, the Third Circuit concluded that "culpability" is no longer a "threshold requirement" when analyzing whether a case is "exceptional." Id. Accordingly, "a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" Id. (citing Octane Fitness, LLC, 134 S. Ct. at 1756). "[W]hether litigation positions or litigation tactics are 'exceptional' enough to merit attorney's fees must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" Id. (quoting Octane Fitness, 134 S.Ct. at 1756.)

Applying these standards to the facts of this case, the Court finds this case "exceptional" for purposes of awarding attorney's fees under 15 U.S.C. § 1117(a). Plaintiffs' claim was a straightforward one – that a former franchisee continued to use its trademarks without permission and then transferred the property in a sham transaction to operators who failed to rectify the unauthorized use of its trademarks.[10] Defendants responded with the argument that Defendants had promised to close a competing Motel 6 property. (See Doc. No. 184 at 1-2.) In all, the offending conduct spanned the course of only three months, yet largely owing to Defendants' conduct, Plaintiffs' straightforward claim resulted in protracted litigation.

For example, the Court continued trial on multiple occasions due to repeated changes in defense counsel. (Doc. Nos. 85, 87, 94, 134, 135, 139, 140, 149, 190.) On June 3, 2013, defense

---

[10] Defendants Shah and I. Patel, members of Defendant 1450 Hospitality which purchased the 1450 Harrisburg Pike property, offered testimony at trial that supported Plaintiffs' sham transaction theory. (See Doc. No. 224 at 21.) Defendant Shah testified that he works full time in the New York City metropolitan area, and Defendant I. Patel testified that he did not visit the property until two years after the property's sale.

counsel withdrew its representation of Defendants 1450 Hospitality, Shah, and I. Patel, in part, for their "refusal to correspond with or reply to communications."[11] (Doc. Nos. 85, 94; see Doc. No. 87.) On May 16, 2014, the Court granted Defendants 1450 Hospitality, Shah and I. Patel's motion to continue trial because they had retained new counsel on May 9, 2014 and claimed they could not meet the deadlines set forth by this Court. (Doc. No. 139, 140, 149.) However, on February 4, 2015, defense counsel withdrew its representation of 1450 Hospitality, I. Patel and Shah for their failure to pay their legal fees. (Doc. Nos. 187, 190; see Doc. Nos. 130, 134, 135.) Altogether, though for a variety of reasons, the trial date was rescheduled on eight occasions. (Doc. Nos. 38, 47, 62, 104, 137, 149, 157-159, 186, 189.) These continuances were always occasioned by the Defendants and were always necessitated at the eleventh hour after opposing counsel and the Court made substantial investments in preparing for trial.

The jury's conclusion that Defendants S. Patel, I. Patel, and Shah "intentionally or willfully" infringed Motel 6's trademarks further supports the finding that this case is "exceptional." (Doc. No. 219.) Although culpability is no longer a "threshold requirement," the Third Circuit in Fair Wind Sailing, Inc. stated that "blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case." Fair Wind Sailing, Inc., 764 F.3d at 315. The jury's finding of culpability is evidenced by the delay between the notice of the infringement on or around November 2, 2011, the preliminary injunction entered on December

---

[11] In fact, Magistrate Judge Arbuckle was referred this case for a discovery dispute consisting of Defendants Zaver, S. Patel and HI Hotel Group's refusal to respond to Plaintiffs' interrogatories or document requests and Defendants 1450 Hospitality, Shah, and I. Patel's refusal to respond to Plaintiffs' document requests. (Doc. Nos. 32, 33, 34.) Additional communication problems with Defendants HI Hotel Group and Zaver led Magistrate Judge Arbuckle, on April 12, 2012, to extend case management order deadlines. (Doc. No. 36-37.)

14, 2011, and the eventual removal of the trademarks on December 31, 2011.[12]  (See Doc. Nos. 21; 223 at 3.)  The Court similarly finds that Defendants HI Hotel Group and 1450 Hospitality were "culpable for their failure to obtain counsel, having been warned by the Court previously that an LLC's failure to retain counsel [would] result in this Court's default judgment."  (Doc. No. 223 at 3.)

Thus, considering the totality of the circumstances, the Court concludes that this case is "exceptional" for purposes of attorney's fees and costs under 15 U.S.C. § 1117(a).[13]  Fair Wind Sailing, Inc., 764 F.3d at 315.  As to all Defendants save Zaver, the Court will award reasonable attorney's fees and costs for Plaintiffs' Lanham Act claims under 15 U.S.C. § 1117(a).

### C.    Attorney's Fees and Costs under the Franchising Agreement

Having addressed whether awarding reasonable attorney's fees and costs is proper under 15 U.S.C. § 1117(a) for Plaintiffs' Lanham Act claims, the Court next turns to Plaintiffs' request for reasonable attorney's fees and costs on their breach of contact claims against Defendants HI Hotel Group, S. Patel, and Zaver pursuant to the Motel 6 franchising agreement.  (Doc. No. 224 at 2.)

Here, in relevant part, Section 14.7 of the Motel 6 franchising agreement entered into between Accor Franchising North America, LLC and Defendant HI Hotel Group, LLC provides:

---

[12] On December 14, 2011, the Court granted Plaintiffs' motion for a preliminary injunction and enjoined Defendants HI Hotel Group, Zaver, S. Patel, 1450 Hospitality, Shah and I. Patel from "utilizing, maintaining, or displaying any signs, fixtures … or other articles which contain or display the Motel 6 proprietary marks."  (See Doc. Nos. 9-2, 21.)  Defendants did not completely remove "materials bearing the Motel 6 name or marks" until December 31, 2011.  (Doc. No. 215 at Stipulation 31.)

[13] "To recover costs under the Lanham Act, therefore, a plaintiff need not establish that the alleged infringer acted maliciously, fraudulently, deliberately, or willfully."  Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001); 3-14 Gilson on Trademarks § 14.03 (2015) ("Under the clear language of the statute, recovery of costs does not require a finding of bad faith or that the case was exceptional ….").

> Franchisee [HI Hotel Group, LLC] shall pay upon demand to Franchisor all damages, costs and expenses, including reasonable attorneys' fees, incurred by Franchisor in connection with Franchisee's default and/or the early termination or expiration of this Franchise Agreement including, without limitation, those incurred to enforce and/or obtain injunctive or other relief in connection with this Section 14.

(Doc. No. 224-2 at 28.) Section 14 of the Motel 6 franchising agreement sets forth the obligations of the franchisee upon termination: including (1) ceasing to "represent to the public or hold itself out as a present or former Motel 6 franchise;" (2) ceasing to "use, by advertising or in any other manner whatsoever, the name 'Motel 6,' [as well as] any Proprietary Marks or identifying characteristics of the System;" and (3) "immediately mak[ing] such modifications or alterations as may be necessary to distinguish the Motel so clearly from its former appearance and from other Motel 6 Motels as to prevent any possibility of confusion therewith by the public." (Doc. No. 224 at 27.)

Moreover, in Attachment 1 to the Motel 6 franchising agreement ("Attachment 1"), Defendants Zaver and S. Patel agree to guarantee, jointly and severally, the franchisor, its affiliates, successors and assigns. (Doc. No. 224-3 at 4.) Attachment 1, in relevant part, provides:

> The undersigned [Defendants Zaver and S. Patel] hereby agree to defend, protect, indemnify and hold Franchisor, its Affiliates, their respective successors and assigns … harmless from and against any and all losses, damages, liabilities, costs and expenses (including but not limited to, reasonable attorneys' fees, reasonable costs of investigation and court costs) resulting from … any act or omission of, or any failure by Franchisee to perform any obligation of Franchisee under the Franchise Agreement …..
>
> The undersigned shall pay Franchisor or its Affiliates for all costs and expenses (including, but not limited to, reasonable attorneys' fees and court costs) incurred by Franchisor in connection with any action brought by Franchisor or its Affiliates to enforce this Guarantee or any other action related to or arising out of this Guarantee in which Franchisor or its Affiliates is deemed to be the prevailing party.

(Id. at 4-5.) Therefore, in light of the aforementioned provisions of the Motel 6 franchising agreement, the Court will award reasonable attorney's fees and costs for Plaintiffs' breach of contract claims against Defendants HI Hotel Group, S. Patel, and Zaver.[14]

### D. Reasonableness of Attorney's Fees

Having determined that an award of reasonable attorney's fees is warranted, the Court turns to the reasonableness of the fees requested. Plaintiffs seek to recover a total of $349,250.80 in attorney's fees for the time and expenses incurred since November 2011. (Doc. No. 224 at 2.) Plaintiffs' memorandum apportioned the requested attorney's fees into three categories: (1) $117,982.60 incurred for the breach of contract claim against Defendants HI Hotel Group, Zaver, and S. Patel; (2) $105,877.43 incurred for the trademark infringement claims against the Defendants HI Hotel Group, Zaver, and S. Patel; and (3) $125,389.77 incurred for the trademark infringement claims against 1450 Hospitality, S. Patel, Shah, and I. Patel.[15] (See Doc. No. 224 at 5, 22-23.)

"A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). The fee petitioner must submit "evidence supporting the hours worked and rates claimed" to satisfy this burden. Id. "The product of an attorney's hourly rate and the number of

---

[14] Plaintiffs also request reasonable attorney's fees and costs on their Lanham Act claims against Defendant Zaver pursuant to the franchising agreement. (Doc. No. 224 at 23.) In light of the aforementioned provisions of the Motel 6 franchising agreement, the Court will similarly award reasonable attorney's fees and costs for Plaintiff's Lanham Act claims against Defendant Zaver pursuant to the franchising agreement.

[15] Plaintiffs claim that they "incurred a total of $3,930.50 in costs as to their breach of contract claim against the HI Hotel defendants, $1,960.69 in costs as to their trademark infringement claims against the HI Hotel defendants, and $1,672.22 in costs as to their trademark infringement claims against the 1450 Hospitality defendants." (Doc. No. 224 at 10.)

hours spent is referred to as the 'lodestar.'" Id. (interior citations omitted). "The lodestar is presumed to be the reasonable fee." Rode, 892 F.2d at 1183 (citing Blum v. Stenson, 465 U.S. 886, 897 (1984)). Accordingly, the Court will first turn to Plaintiffs' proposed hourly rates.

### 1. Reasonableness of Hourly Rate

Plaintiffs' counsel, Edward Greenberg, and Kristin Topolewski, contend that the hourly rates charged are reasonable based on their experience and expertise. (Doc. No. 224 at 4; 224-9 at 2-3.) Defendants do not challenge the rates as presented. (See Doc. Nos. 227, 228.)

A court reviewing an hourly rate does so by "assess[ing] the experience and skill of the prevailing party's attorneys," and determining whether or not those fees are consistent with prevailing rates in the geographic area for similar services. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). A fair starting point for this reasonable rate is the attorney's "usual billing rate." Pub. Interest Research Grp. of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). However, an "attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits." Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 595 (3d Cir. 2000) (citing Blum v. Stenson, 465 U.S. 886, 895-96 n. 11 (1984)). If a "district court finds that the prevailing party has failed to sustain its burden with respect to a reasonable market rate, it must use its discretion to determine the market rate." L.J. ex rel. V.J. v. Audubon Bd. of Educ., 373 F. App'x 294, 297 (3d Cir. 2010) (internal citations omitted).

Here, Plaintiffs' counsel provides hourly rates for each individual line item on their billing sheets, (Doc. No. 224-5, 224-6, 224-7, 224-8), including rates for the two attorneys who served as Plaintiffs' counsel. (Doc. No. 224 at 4.) Edward Greenberg charged from $280 an hour to $300 an hour during the pendency of this case. Id. Kristin Topolewski charged from $180 an hour to $200 an hour. Id. Edward Greenberg's supporting affidavit states that Mr.

Greenberg has practiced law for thirty-four years, conducted numerous trials, and represented Motel 6 and affiliated entities for 20 years.  (Doc. No. 224-9 at 2-3.)  Edward Greenberg's affidavit also details Ms. Topolewski's education and litigation experience.  (Id.)

However, Plaintiffs' counsel fails to meet its burden of showing reasonableness through "evidence other than the attorney's own affidavits."  Holmes, 205 F.3d at 595 (emphasis added).  Plaintiffs did not submit evidence other than Edward Greenberg's own affidavit to substantiate the reasonableness of its requested hourly rates.  As such, the Court must exercise its discretion in determining a reasonable rate.  L.J. ex rel. V.J., 373 F. App'x at 297; Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001).  However, given the prevailing market rate, counsel's qualifications and experience, and the quality of representation, the Court exercises its discretion and concludes that hourly figures Plaintiffs put forth are, in fact, reasonable.  See, e.g., Clementoni v. Allied Interstate, Inc., No. 4:12-CV-936, 2013 WL 3973083, at *5 (M.D. Pa. July 31, 2013).

### 2. Reasonableness of Hours Billed

The Court next turns to the reasonableness of the number of hours expended.  When calculating the hours reasonably expended, a district court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001).  Similarly, a court may exclude hours when the evidence presented "inadequately documents the hours claimed."  Rode v. Dellarciprete, 892 F.2d 1177, 1182-3 (3d Cir. 1990).  However, the "district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'"  Id. at 1183 (quoting Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989)).  Having

reviewed Plaintiff's evidence and in light of the amount and quality of the work submitted, the Court finds no reason to reduce the number of hours presented as expended by Edward Greenberg and Kristin Topolewski.

### E.     Prejudgment Interest under 15 U.S.C. § 1117(a)

Furthermore, Plaintiffs urge this Court to award prejudgment interest "given the intentional nature of [D]efendants' infringement and the protracted litigation."  (Doc. No. 224 at 19.)  Although the Court is cognizant that the Second and Sixth Circuit Courts of Appeals have concluded that an award of prejudgment interest is within the discretion of the trial court, Am. Honda Motor Co. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990); see Wynn Oil Co. v. Am. Way Serv. Corp., 61 F.3d 904 (6th Cir. 1995), Section 35(a) of the Lanham Act does not provide for prejudgment interest.  Moscow Distillery Cristall v. Pepsico, Inc., 141 F.3d 1177 (9th Cir. 1998) ("Prejudgment interest is available under the Lanham Act only for counterfeiting ...."); see also Georgia-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 722 (4th Cir. 2015) (finding no textual support for the conclusion that Section 35(a) authorizes prejudgment interest in an "exceptional" case).  Because this case does not involve counterfeiting, the Court is not persuaded that the circumstances warrant an award of prejudgment interest.  Accordingly, the Court will deny Plaintiffs' request for prejudgment interest.

**III. CONCLUSION**

For the reasons stated above, Plaintiffs' petition for treble damages, attorney's fees, costs and prejudgment interest will be granted in part and denied in part.[16] An order consistent with this memorandum follows.

---

[16] The decision to impose joint and several liability or impose an award of attorney's fees jointly and severally against certain defendants is within the district court's discretion. See Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 114 (2d Cir. 1988) (addressing a district court's award of attorney's fees under the Lanham Act); see, e.g., Mike Vaughn Custom Sports, Inc. v. Piku, No. 12-13083, 2015 WL 4603171, at *7 (E.D. Mich. July 30, 2015); Johnson & Johnson v. Azam Int'l Trading, No. 07 -CV-4302 SLT SMG, 2013 WL 4048295, at *17 (E.D.N.Y. Aug. 9, 2013); PepsiCo, Inc. v. IRIE Motivations, Inc., No. 08-2242, 2008 WL 5732153, at *1 (C.D. Cal. Dec. 29, 2008); see also Dumas v. Dagl, No. 88-2293, 1990 WL 258343, at *6 (S.D.N.Y. May 22, 1990) ("Ordinarily all defendants should be jointly and severally liable for costs" in a copyright infringement case). As such, the Court will find the Defendants jointly and severally liable as detailed in the accompanying order.